IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:11-CV-85-FL

| | |
|---|---|
| ELIZABETH A. WIGGINS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)            **ORDER**<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social Security, )<br>)<br>Defendant. )<br>) | |

This matter comes before the court on the parties' cross motions for judgment on the pleadings (DE ## 65, 72). Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), United States Magistrate Judge Robert B. Jones, Jr. entered memorandum and recommendation ("M&R") (DE # 75) wherein he recommends that the court deny plaintiff's motion, grant defendant's motion, and uphold the final decision of the Commissioner of Social Security ("Commissioner"). Plaintiff timely filed objection to the M&R, to which defendant responded. In this posture, the issues raised are ripe for ruling. For the reasons that follow, the court adopts the recommendation of the magistrate judge.

## BACKGROUND

On February 13, 2008, plaintiff filed an application for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"), alleging a disability onset date of August 1, 2003. Hearing was held before an Administrative Law Judge ("ALJ") on February

1, 2010. Plaintiff was represented by counsel, and a vocational expert ("VE") testified. On March 23, 2010, the ALJ issued a decision denying plaintiff's request for benefits. The Appeals Council denied plaintiff's request for review on January 4, 2011. Plaintiff filed her complaint in this court on February 28, 2011, seeking review of the final administrative decision.

A detailed summary of the procedural and factual history of the case is found in the M&R. See M&R 4-8. Where plaintiff does not object to this portion of the M&R, the factual history of the case as set forth in the M&R is incorporated here by reference.

## DISCUSSION

A.    Standard of Review

The court has jurisdiction under 42 U.S.C. § 405(g) to review the Commissioner's final decision denying benefits. The court must uphold the factual findings of the ALJ "if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotations omitted). The standard is met by "more than a mere scintilla of evidence but . . . less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

To assist it in its review of the Commissioner's denial of benefits, the court may "designate a magistrate judge to conduct hearings . . . and to submit . . . proposed findings of fact and recommendations for the disposition [of the motions for judgment on the pleadings]." See 28 U.S.C. § 636(b)(1)(B). The parties may object to the magistrate judge's findings and recommendations, and the court "shall make a *de novo* determination of those portions of the report or specified proposed

findings or recommendations to which objection is made." Id. § 636(b)(1). Absent a specific and timely filed objection, the court reviews only for "clear error" and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

The ALJ's determination of eligibility for Social Security benefits involves a five-step sequential evaluation process, which asks whether:

> (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a medical impairment (or combination of impairments) that are severe; (3) the claimant's medical impairment meets or exceeds the severity of one of the impairments listed in [the regulations]; (4) the claimant can perform her past relevant work; and (5) the claimant can perform other specified types of work.

Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). The burden of proof is on the claimant during the first four steps of the inquiry but shifts to the Commissioner at the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

In the instant matter, the ALJ performed the sequential evaluation. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since August 1, 2003, the alleged onset date of her disability. The ALJ then found at step two that plaintiff had the following severe impairments: depression, anxiety and panic attacks, and attention deficit disorder. However, at step three the ALJ further determined that these impairments were not sufficiently severe to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Prior to proceeding to step four, the ALJ assessed plaintiff's residual functional capacity

3

("RFC") and found that plaintiff had the ability to perform a full range of work at all exertional levels but with the following nonexertional limitations: she was limited to simple, repetitive, routine tasks or essentially unskilled work. (R. 17). In making this assessment, the ALJ found plaintiff's statements about her limitations not fully credible. The ALJ further found that plaintiff was unable to perform any past relevant work. However, at step five, upon considering plaintiff's age, education, work experience, and RFC, the ALJ concluded that jobs exist in significant numbers in the national economy that plaintiff could perform. The ALJ therefore concluded that plaintiff had not been under a disability, as defined in the Social Security Act, from August 1, 2003, through the date of his decision.

B. Analysis

Plaintiff raises one objection to the M&R. She contends that the magistrate judge incorrectly found that her condition did not meet or equal Listing 12.05, the listing for mental retardation. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. After careful consideration of the arguments presented and the evidence in the record, the court overrules plaintiff's objection for the reasons set forth below.

At the third step of the sequential evaluation process, the ALJ must consider the medical severity of the applicant's impairment(s) and determine whether any impairment meets or equals one of the listings in 20 C.F.R. Pt. 404, Subpt. P, App 1. Plaintiff bears the burden of demonstrating that her impairment meets or equals a listed impairment. Pass, 65 F.3d at 1204.

Plaintiff contends that she met the criteria of Listing 12.05, the listed impairment for mental retardation. Listing 12.05 requires a showing of "deficits in adaptive functioning initially manifested during the development period; *i.e.*, the evidence demonstrates or supports onset of the impairment

4

before age 22" ("Prong 1"). 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05. The listing also requires satisfaction of one of four additional requirements identified as Requirements A-D. Id. At issue in this case is Requirement C, which calls for a showing of "[a] valid verbal, performance, or full scale IQ of 60 through 70" ("Prong 2"), as well as "a physical or other mental impairment imposing an additional and significant work-related limitation of function" ("Prong 3"). Id. § 12.05C (emphasis added). See also Hancock v. Astrue, 667 F.3d 470, 473 (4th Cir. 2012).

Under the first prong of the Listing 12.05C analysis, plaintiff must satisfy the diagnostic definition of mental retardation by showing that she suffers from "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the development period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05. Listing 12.05 does not define "adaptive functioning." But the Social Security Administration informs: "[t]he definition of [mental retardation] we use in our listings is consistent with, if not identical to, the definitions . . . used by the leading professional organizations." Technical Revisions to Medical Criteria for Determinations of Disability, 67 Fed. Reg. 20,018-01, 20,022 (Apr. 24, 2002). Accordingly, this court looks for guidance to the fourth edition of the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"). See Dixon v. Astrue, No. 7:08-cv-218-FL, 2009 WL 4545262, at *2 (E.D.N.C. Dec. 4, 2009).

"The essential feature of Mental Retardation is significantly subaverage general intellectual functioning . . . that is accompanied by significant limitations in adaptive functioning in at least two of the following skill areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety."

5

DSM-IV 39 (1994). "*Adaptive functioning* refers to how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, sociocultural background, and community setting." Id. at 40 (emphasis in original).

Plaintiff first contends that the record substantiates a finding that she suffered from deficits in adaptive functioning in the area of functional academic skills, or education. In support, plaintiff states that "she had to repeat the [twelfth] grade" and "was enrolled in and performing poorly in below-grade level coursework instead of the usual sequential academic courses." Pl.'s Objections 1. The ALJ emphasized however that plaintiff graduated from high school. Further, he determined that she had never enrolled in special education classes and found incredible her testimony to the contrary. (R. 13) ("[W]hen asked in her initial disability interview if she was ever in special education[,] [plaintiff] answered no[,] and her school transcripts do not indicate any special classes.").[1] The ALJ's credibility finding is entitled to substantial deference. Barker v. Shalala, 40 F.3d 789, 795 (6th Cir. 1994).

Other districts courts in this circuit, when reviewing whether a claimant suffered deficits in adaptive functioning in education, have found important a claimant's illiteracy, failure to graduate from high school, enrollment in special education classes, and poor grades. See, e.g., Holtslaw v. Astrue, No. 1:10-cv-199, 2011 WL 6935499, at *4 (W.D.N.C. Dec. 30, 2011); see also Catron v. Astrue, No. 2:08-cv-43, 2009 WL 2424679, at *2 (W.D.Va. Aug. 1, 2009). Here, the ALJ found – and substantial evidence supports – that plaintiff (1) is literate (she often reads romance novels); (2)

---

[1] The court, in its review of plaintiff's high school transcripts lodged in the record at pages 297 through 300, sees no indication of special education courses.

6

graduated from high school; (3) did not take special education classes; and (4) did not receive particularly poor grades.[2] Accordingly, substantial evidence supports the ALJ's finding that plaintiff did not suffer from deficits in adaptive functioning in education before the age of 22.

Plaintiff next appears to argue that results from a psychological evaluation conducted in July 2009, when plaintiff was 39 years old, show that she suffered deficits in adaptive functioning during development. Plaintiff states that she was assessed with a full scale IQ composite score of 61.[3] She then argues that, in the absence of evidence of a change in her intellectual functioning, it must be assumed that her IQ has remained relatively constant.

The first prong determination regarding deficits in adaptive functioning is separate and distinct from the second prong determination of whether plaintiff's IQ score falls between 60 and 70. "The Fourth Circuit has not held that low IQ alone proves manifestation of deficits in adaptive functioning before age 22." Edge v. Astrue, 627 F. Supp. 2d 609, 618 (E.D.N.C. 2008) (quoting Justice v. Barnhart, 431 F. Supp. 2d 617, 619 (W.D. Va. 2006)). Rather, "even if the record clearly establishes that the plaintiff meets [requirement C], a finding of mental retardation cannot be warranted without a finding that the plaintiff manifested deficits in adaptive functioning before age 22." Justice, 431 F. Supp. 2d at 619.

---

[2] "The claimant's high school transcripts show a 'C' grade in math in the tenth grade; "A-" for basic math in the eleventh grade; and 'C' in the twelfth grade." (R. 13).

[3] An ALJ "has the discretion to assess the validity of an IQ test result and is not required to accept it even if it is the only such result in the record." Hancock v. Astrue, 667 F.3d 470, 474 (4th Cir. 2012). Here, the ALJ found that plaintiff's full scale IQ score of 61 was inconsistent with her WJ-III Broad Math and Broad Written Language scores. (R. 13). The latter scores, the examiner Grace Stroud reported, were higher than would be expected given plaintiff's low IQ score. (R. 148). In addition, the ALJ found that plaintiff's low full scale IQ score was inconsistent with her high school record. (R. 13). The ALJ therefore questioned the validity of plaintiff's full scale IQ score, raising an issue as to whether plaintiff satisfied prong 2 of the Listing 12.05C analysis, which requires a showing of a "valid verbal, performance, or full scale IQ of 60 through 70." 20 C.F.R. Pt. 404, Subpt. P, App. 1 §12.05C. The court need not determine, however, whether prong 2 is satisfied, because plaintiff has not satisfied the first prong.

Here, plaintiff has failed to satisfy her burden of establishing the first prong of the Listing 12.05C analysis. She has not directed the court to evidence in the record that would support a finding that she suffered, prior to age 22, from deficits in adaptive functioning in any of the following skill areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety. See DSM-IV 39 (1994). Accordingly, the ALJ's determination that plaintiff did not have an impairment that met or equaled Listing 12.05 is supported by substantial evidence.

Finally, the court has reviewed the remaining portions of the M&R to which no objections were made and finds no clear error.

## CONCLUSION

Upon *de novo* review of those portions of the magistrate judge's M&R to which specific objections have been filed, and upon considered reviewed of those portions of the M&R to which no such objection has been made, the court ADOPTS the findings and recommendations of the magistrate judge in full, GRANTS defendant's motion for judgment on the pleadings (DE # 72), DENIES plaintiff's motion for judgment on the pleadings (DE # 65), and upholds the final decision of the Commissioner. The clerk is directed to close this case.

SO ORDERED this the 21st day of March, 2012.

LOUISE W. FLANAGAN
United States District Judge